UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 9:10-cv-80844-WJZ

SHARRON TASHA FORD,

    Plaintiff,

v.

CITY OF BOYNTON BEACH, a Florida
municipal corporation, and ROBERT
KELLMAN, RICKY LATURE, and
RUSSELL FAINE, in their individual
capacities,

    Defendants.

_____/

PLAINTIFF'S RESPONSE TO INDIVIDUAL DEFENDANTS' MOTION TO DISMISS

    The individual police officer defendants (Robert Kellman, Ricky Lauture, and Russell Faine) filed a motion to dismiss based solely upon qualified immunity. DE 3. For the reasons set forth below, at all times relevant to this litigation, plaintiff had a clearly established First Amendment right under Eleventh Circuit precedent to videotape police conduct in public. Further, it was clearly established law that Fla. Stat. §943.03(1)(a) requires that an individual who objects to being recorded must have a reasonable expectation of privacy. Under the circumstances presented in this lawsuit, as a matter of law, the individual police officers did not have a reasonable expectation of privacy in their words uttered in public to plaintiff and others. Hence, the motion to dismiss should be denied.

The basic facts in this case are not in dispute. *See* City of Boynton Beach's Answer, DE 4. Plaintiff was arrested, *inter alia*, for openly videotaping police officers in public in the presence of onlookers during the execution of their official duties. As set forth *infra*, plaintiff's videotaping was protected by the First Amendment and her arrest was without probable cause or arguable probable cause. Consequently, the denial of qualified immunity effectively holds the individual police officers liable to plaintiff on Count III of her Complaint.

I.  AT THE TIME OF PLAINTIFF FORD'S ARREST, IT WAS CLEARLY ESTABLISHED LAW THAT SHE HAD A FIRST AMENDMENT RIGHT TO VIDEOTAPE THE POLICE, IN PUBLIC, IN THE PERFORMANCE OF THEIR OFFICIAL DUTIES.

Defendants rest their assertion of qualified immunity solely on an unpublished decision by an Eleventh Circuit panel, *Migut v. Flynn*, 131 Fed.Appx. 262, 2005 WL 1130373 (11th Cir. 2005). *Migut* is inapposite here for several reasons.

A.  *MIGUT* DOES NOT ADDRESS THE FIRST AMENDMENT.

*Migut* is an unpublished decision in a §1983 false arrest case containing no discussion of the First Amendment right to openly videotape public officials performing official duties in public places. Neither the *Migut* panel nor the individual police officer defendants cite binding Eleventh Circuit precedent on this exact point decided nearly a decade before plaintiff was arrested, and five years before the *Migut* decision. *See Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000) (First Amendment analysis of right to videotape police activity in public).

2

In *Smith*, the Eleventh Circuit squarely held that "[t]he First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest." 212 F.3d at 1333 (citations omitted). The "right to record matters of public interest" is protected by the First Amendment, clearly established in this circuit, and specifically includes the right "to photograph or videotape police conduct." *Id*. This is precisely what plaintiff Ford was doing. *See* Complaint ¶¶ 13 – 18. By definition, "videotape" includes the "recording of visual images and *sound*." *See* http://www.merriam-webster.com/dictionary/videotape (emphasis added).[1]

      1. ASSUMING, *ARGUENDO*, THAT §934.03 IS A CONTENT-NEUTRAL STATUTE, WHICH IT IS NOT, IT FAILS TO PASS CONSTITUTIONAL MUSTER.

The *Smith* Court indicated that the First Amendment right to videotape police or other public officials in public places is "subject to reasonable time, manner and place restrictions." 212 F.3d at 1333. It is well established that in a public place and applying a content-neutral[2] standard:

---

[1] "When a statutory term is undefined, courts give it its 'ordinary meaning' or 'common usage.' To ascertain ordinary meaning, courts often turn to dictionary definitions for guidance." *U.S. v. Lopez*, 590 F.3d 1238, 1248 (11th Cir. 2009) (citations omitted) (citing use of both the Merriam-Webster Dictionary and The American Heritage Dictionary of the English Language). *See also LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1189 n. 7, and 1200 n. 32 (11th Cir. 2010) (utilizing the Merriam-Webster Online Dictionary).

[2] As argued below, §934.03 contains an identity based restriction which allows police officers to engage in conduct which is criminalized for ordinary citizens. In this case, that restriction triggers strict scrutiny. Because the statute cannot survive the intermediate scrutiny under the time, place, manner analysis, *a fortiori* it cannot survive a strict scrutiny analysis.

> the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions "are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information."

*Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (quoting *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984)).[3] However, to pass constitutional muster,

> a regulation of the time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate, content-neutral interests but [] it need not be the least restrictive or least intrusive means of doing so.
> Rather, the requirement of narrow tailoring is satisfied "so long as the ... regulation promotes a substantial government interest that would be achieved less effectively absent the regulation."

*Ward v. Rock Against Racism*, 491 U.S. at 798-99 (footnote and citations omitted).

A categorical ban on videotaping without the unanimous consent of all police officers present simply cannot satisfy this standard. First it is difficult to articulate a substantial government interest in *preventing* the videotape recording of police officers performing their official duties in public. Police conduct, or misconduct, is of substantial public concern. *See, e.g.*: *Fikes v. City of Daphne,* 79 F.3d 1079, 1084 (11th Cir. 1996) (question of whether police officers are properly performing their duties, as a public safety issue, must be considered an issue of political or social

---

[3] One example of a reasonable restriction would be to authorize the police to restrict videotaping when it is being done in a manner which materially interferes with an officer's performance of his or her duties (such as getting between an officer and a suspect when the officer is attempting to communicate with the suspect).

4

concern); *Cooper v. Smith,* 89 F.3d 761, 765 (11th Cir. 1996) ("There can be no doubt that corruption in a police department is an issue of public concern"). *See also Brayshaw v. City of Tallahassee, Florida,* --- F.Supp.2d ----, 2010 WL 1740832 at *3 (N.D. Fla., April 30, 2010) ("The publication of truthful personal information about police officers is linked to the issue of police accountability through aiding in achieving service of process, researching criminal history of officers, organizing lawful pickets, and other peaceful and lawful forms of civic involvement that publicize the issue."). So long as the videotaping is not interfering with the officers' performance of their official functions in public, there is no governmental interest in banning such videotaping.[4]

Further, §934.03(2)(c) carves out a law enforcement exception to interception of communications. Under this statutory exemption, law enforcement officers are permitted to engage in the interception of oral communications in public spaces while prohibiting interception by citizens of those same communications. This dual standard undermines the significance of any governmental interests in the differential treatment based upon the identity of the actor.

Nor is application of the statute to these circumstances narrowly tailored – it creates a total ban at the sole discretion of each individual officer at the scene. As applied by the defendant police officers here, it categorically bans recording without

---

[4] Indeed, there are significant governmental interests in having police officers videotaped. It provides a legitimate check on police activity and serves to document officers performing their duties in a professional manner. Similarly, if an officer is abusing his authority, it offers evidence to departmental supervisors, and municipalities, in order to investigate and take corrective action when necessary to ensure professional performance.

5

the officers' unanimous consent and closes down communication of information that can uniquely be captured by videotaping their conduct.

Therefore, Section 934.03 is neither a reasonable time, place or manner restriction nor narrowly tailored to further a significant governmental interest. It therefore violates the First Amendment as applied to plaintiff's videotaping. Consequently, plaintiff's arrest for videotaping the defendant police officers in the public execution of their official duties violated her First Amendment rights. Since this right was clearly established by *Smith* nine years before her arrest, defendants' motion to dismiss should be denied.

    2.  AS INTERPRETED BY DEFENDANTS, § 934.03 IS A BAN SUBJECT TO STRICT SCRUTINY, AND NOT A TIME, PLACE AND MANNER RESTRICTION.

Defendants interpret §943.03 as prohibiting all un-consented recording of police by citizens. If that prohibition applies to police-citizen encounters, then there is no time, place or manner in which a citizen can record encounters with police officers. If there is no time, place or manner in which citizens can record officers without their consent, then §943.03 operates as a complete ban on non-consensual recording of police-citizen encounters. *See, e.g.*, City *of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 443 (2002) ("ordinance warrants intermediate scrutiny only it if it is time, place, and manner regulation and not a ban"). Because it is a complete ban, §943.03 is subject to strict scrutiny. And because it cannot survive intermediate scrutiny for the reasons set forth in Section I.A.1, above, it *ipso facto* cannot survive strict scrutiny.

### 3. IN ADDITION TO THE ABOVE INFIRMITIES, THE STATUTE IS NOT CONTENT NEUTRAL.

Section 943.03, as applied to prohibit citizens from recording public officials performing official duties in public places, suffers from two content based infirmities that also subject it to strict scrutiny. The first infirmity relates to the content of the communications themselves; the second to the statute's explicit speaker-identity discrimination.

A content-based regulation either explicitly or implicitly regulates speech on the basis of the substance of the message. A speaker-identity law goes beyond mere content-based discrimination and regulates speech based upon the identity of the speaker. Speaker-identity discrimination is a subset of content discrimination; all speaker-identity discrimination is first content discrimination, but not all content discrimination is speaker-identity discrimination. As the Supreme Court recently observed:

> Quite apart from the purpose or effect of regulating content, moreover, the Government may commit a constitutional wrong when by law it identifies certain preferred speakers. By taking the right to speak from some and giving it to others, the Government deprives the disadvantaged person or class of the right to use speech to strive to establish worth, standing, and respect for the speaker's voice. The Government may not by these means deprive the public of the right and privilege to determine for itself what speech and speakers are worthy of consideration. The First Amendment protects speech and speaker, and the ideas that flow from each.

*Citizens United v. Federal Election Com'n*, 130 S.Ct. 876, 899 (2010).

      a.      SECTION 934.03 REGULATES BASED ON THE SUBSTANCE OF THE MESSAGE BECAUSE IT EXEMPTS COMMUNICATIONS RELATING TO THE PERFORMANCE OF OFFICIAL DUTIES.

Section 934.03(1)(a) is not a content neutral time, place or manner restriction. Rather, it carves out an exception for law enforcement officers. *See* §934.03(2)(c) (law enforcement officials entitled to statutory exemption when the content of the communications relates to the performance of official duties). It is a content based exception because the content of the communications relates to the performance of official duties.

The exemption would not apply, for example, to a divorced police officer surreptitiously recording a phone conversation with her ex-former spouse in order to obtain evidence for use in an upcoming child custody hearing. Thus, in order to determine whether the exemption applies, it is necessary to consider the content, and purpose, of the interception.

      b.      BY PROHIBITING CITIZENS FROM RECORDING CITIZEN-POLICE ENCOUNTERS WHILE EXEMPTING POLICE OFFICERS FROM DOING THE SAME THING, § 934.03 REGULATES SPEECH BASED UPON THE IDENTITY OF THE SPEAKER.

Through the §934.03(2)(c) exception, the statute allows police officers to record citizen misconduct without the citizen's consent while at the same time prohibiting citizens from recording police misconduct without the officers' consent.[5]

---

[5] Videotaping is perhaps the most powerful and effective way to memorialize police-citizen encounters, and accurate recording can benefit both. *See, e.g., Buckley v. Haddock*, 292 Fed.Appx. 791, 792 fn 1, 2008 WL 4140297 (11th Cir., Sept. 9, 2008) ("The entire incident at issue was captured by a police video camera. We recount the facts as depicted in the videotape, which is part of the record.")

(footnote continued …)

8

Thus, as interpreted by defendant police officers, §934.03(2)(c) would have permitted the police officers to videotape their exchange with plaintiff and her son while at the same time, prohibited plaintiff from engaging in the same activity.

If defendant police officers' interpretation of the statute is correct – that law enforcement can intercept oral communications of citizens in public places but citizens cannot intercept those same communications – §934.03 is <u>not</u> content neutral because it regulates speech based upon the identity of the actor involved.

The general rule is "[l]aws designed or intended to suppress or restrict the expression of specific speakers contradict basic First Amendment principles." *United States v. Playboy Entm't Group*, 529 U.S. 803, 812 (2000). *See also*: *Madison Joint Sch. Dist. v. Wisconsin Employment Relations Comm'n*, 429 U.S. 167, 176 (1976) (the government may not discriminate among speakers based on their employment status); *Vergara v. City of Waukegan*, 590 F.Supp.2d 1024, 1037 (N.D. Ill. 2008) (laws or actions "aimed at suppressing the speech of a specific speaker" are "subject to strict scrutiny").

In short, §934.03 runs afoul of cases which invalidate similar laws because they favor one side of a controversy while prohibiting the other from engaging in virtually identical conduct. *See, e.g.*: *Boos v. Barry*, 485 U.S. 312 (1988) (striking down a Washington D.C. law prohibiting displays near foreign embassies that were intended <u>to disparage</u> that foreign government); *Mills v. Alabama*, 384 U.S. 214

---

(... footnote continued)
(citing *Scott v. Harris,* 550 U.S. 372 (2007) (stating that the court of appeals "should have viewed the facts in the light depicted by the [police] videotape")), *cert. denied*, 129 S.Ct. 2381 (2009).

(1966) (invalidating a state law prohibiting election day newspaper editorial endorsements).

Section §934.03 with its law enforcement officer exemption also violates other constitutional principles of equal access. The Supreme Court has condemned laws, such as §934.03, which allow speech on a matter of public interest by a predetermined, interested speaker while denying the same type of speech to all others. For example, *Police Dept. of Chicago v. Mosley*, 408 U.S. 92 (1972), invalidated an ordinance that prohibited all picketing in front of schools during specified times except for picketing by employees in a peaceful labor dispute. Mosley, who regularly peacefully picketed in front of a school on matters of race discrimination, was threatened with arrest under the ordinance. *Mosley* noted that under Equal Protection and the First Amendment,[6] "government may not grant the use of a forum to people whose views it finds acceptable but deny use to those wishing to express less favored or more controversial views." 408 U.S. at 96. Likewise, in *Carey v. Brown*, 447 U.S. 455 (1980), the Court struck down a law that barred picketing in front of residences except for labor dispute picketing. This statute fell prey to strict scrutiny, because "it is the content of the speech that determines whether it is within or without the statute's blunt prohibition." *Id.* at 462 (emphasis added). *See also R.A.V. v. St. Paul*, 505 U.S. 307, 391 (1992) ("The

---

[6] "First Amendment claims are obviously intertwined with interests arising under the Equal Protection Clause." *Ark. Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 227 n.3 (1987).

First Amendment does not permit [government] to impose special prohibitions on those speakers who express views on disfavored subjects.").

Once a court determines that a regulation is content-based or viewpoint discriminatory, or does not provide equal access, the regulation must be subjected to strict scrutiny. Challenged statutes tested under strict judicial scrutiny are presumptively unconstitutional and can only be upheld if the government demonstrates a compelling reason for the regulation. *See Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Bd.*, 502 U.S. 105, 118 (1991) (in order to justify differential treatment of speech on the basis of content, "the State must show that its regulation is necessary to serve a compelling state interest and is narrowly drawn to achieve that end") (quoting *Ark. Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 231 (1987)).

As applied to plaintiff Ford's conduct, §934.03 cannot survive a strict scrutiny analysis and, as a matter of law, its application violated her clearly established First Amendment right to videotape the police engaged in official business in public.

B.     *MIGUT* WAS DECIDED ON A SIGNIFICANTLY DIFFERENT SET OF FACTS.

It appears that the tow truck operator in *Migut* was surreptitiously recording the traffic stop from inside his vehicle,[7] a private or semi-private place. Here, in contrast, plaintiff here was openly recording the police officers in a public place at all times. Additionally, plaintiff Ford, unlike Migut, was not the initial target for

---

[7] It was only after noticing the tape recorder that the police officer told Migut to turn it off. 131 Fed.Appx. at 263.

arrest by the police. Nor was Migut observing police conduct – he was attempting to record his conversation with the police officer during a traffic stop. Plaintiff, however, was videotaping the police officers' treatment, in public, of her son.

While *Migut* may have been wrongly decided, it is enough dissimilar to conclude that *Migut* has no application here even if it could be reconciled with *Smith v. City of Cumming*.

### C. *MIGUT* LACKS PRECEDENTIAL VALUE AND IS NOT PERSUASIVE.

Unpublished decisions such as *Migut*, of course, are not binding precedent. *Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1338 (11th Cir. 2008) (rejecting prior unpublished decision). The legal issue in question must be given independent consideration:

> Although an unpublished opinion may be cited as persuasive authority, 11th Cir. R. 36-2, it is not binding authority. Moreover, an unpublished opinion would in any event be persuasive only to the extent that a subsequent panel finds the rationale expressed in that opinion to be persuasive after an independent consideration of the legal issue.

*Twin City Fire Ins. Co., Inc. v. Ohio Cas. Ins. Co., Inc.*, 480 F.3d 1254, 1260 n. 3 (11th Cir. 2007) (finding prior unpublished decision unpersuasive). The *Migut* panel's failure to even cite *Smith v. City of Cumming*, let alone explain how *Smith* was inapplicable to the facts before that panel severely undermines the credibility of *Migut* and its application to this case.

Plaintiff's videotaping of the defendant police officers during the execution of their official duties, in public, is fully protected by the First Amendment and that

right was clearly established at the time of her arrest. Hence, defendants' motion to dismiss on qualified immunity grounds should be denied in its entirety.

II. UNDER THE PLAIN MEANING OF THE STATUTE, PLAINTIFF FORD'S VIDEOTAPING OF THE POLICE, IN PUBLIC, IN THE PERFORMANCE OF THEIR OFFICIAL DUTIES, DID NOT CONSTITUTE INTERCEPTION OF AN "ORAL COMMUNICATION."

To the extent that Fla. Stat. §934.03(1)(a) *could* be applied to plaintiff's situation, it runs afoul of the First Amendment. However, the Court need not find the Florida statute unconstitutional as applied to plaintiff in this case because the police officer defendants did not have a reasonable expectation of privacy in their public statements which were videotaped by plaintiff.

The definitional section of Chapter 934 ("Security of Communications") defines "oral communication" as "any oral communication uttered by a person *exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation* and does not mean any public oral communication uttered at a public meeting or any electronic communication." Fla. Stat. §934.02(2) (emphasis added). "From this language, it is clear that the legislature did not intend that every oral communication be free from interception without the prior consent of all the parties to the communication." *State v. Inciarrano*, 473 So.2d 1272, 1275 (Fla. 1985). "The Florida Supreme Court has interpreted the test set forth in this definition as substantially the same test used in a Fourth Amendment right to privacy analysis." *Stevenson v. State*, 667 So.2d 410, 412 (Fla. 4th DCA 1996) (*citing Mozo v. State,* 632 So.2d 623 (Fla. 4th DCA 1994), *approved,* 655 So.2d 1115 (Fla. 1995)).

13

For an oral conversation – such as between the defendant police officers, plaintiff and others at issue here – to be protected under §934.03(1)(a), Florida courts have determined that the speaker must have an actual subjective expectation of privacy, along with a societal recognition that the expectation is reasonable. *State v. Inciarrano,* 473 So.2d at 1275. "A significant factor used in determining the reasonableness of the [speaker's] expectation of privacy in a conversation is the location in which the conversation or communication occurs. 'Conversations occurring inside an enclosed area or in a secluded area are more likely to be protected under section 934.02(2).'" *Stevenson v. State,* 667 So.2d at 412 (quoting *Cinci v. State,* 642 So.2d 572, 573 (Fla. 4th DCA 1994)).

Besides location, "[o]ther significant factors used in determining the reasonableness of the [speaker's] expectation of privacy are the manner in which the oral communication is made and the kind of communication." *Stevenson,* 667 So.2d at 412. As noted by the Supreme Court over forty years ago,

> [T]he Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.

*Katz v. United States,* 389 U.S. 347, 351 (1967) (citations omitted).

Here, the defendant police officers were on a public sidewalk, in the open and next to a parking lot. Complaint, ¶¶ 11-12. Other than repeatedly, and incorrectly, telling plaintiff that she had to have their permission to videotape what was transpiring, the officers made no effort to move away from the public area in order

to complete their business with plaintiff's son. Rather, they continued to engage in conversations with plaintiff and her son on the public sidewalk, despite the knowledge that she was in fact videotaping their actions and despite the fact that anyone passing by, walking through the parking lot, or standing nearby, could overhear the police officers' words.

Nor is there any indicia that the content of the defendant police officers' words were intended to be confidential and outside of the public purview. *Id.* ¶¶ 11-17. Indeed, police reports documenting what the police officers did at the scene are a matter of public record in Florida. *See* Fla. Stat. §119.105. There simply is no reasonable expectation of privacy in conversations taking place on a public street in open view with no indicia of a subjective expectation of privacy.[8] *See Stevenson v. State*, 667 So.2d at 411-12 (conversation between men standing on the street and someone in a van in the road, overheard through use of "bionic ears," lacks a reasonable expectation of privacy and did not run afoul of Chapter 934).[9]

Under these well established Florida standards as to what constitutes an "oral communication" within the meaning of the statute, plaintiff did not intercept

---

[8] Under defendants' expansive view of §934.03(1)(a), the statute could have been used to target the videotaping of a protest and counter-protest in Brevard County. *See, e.g., Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 785-90 (1994).

[9] Even in a government office, Florida courts have held oral conversations between public officials not covered by the statute. *See, e.g., Department of Agriculture and Consumer Services v. Edwards*, 654 So.2d 628 (Fla. 1st DCA 1995) (finding no reasonable expectation of privacy in meeting between supervisors and employee under circumstances that could lead to disciplinary action; hence employee's recording of meeting did not violate §934.03(1)(a)).

an oral communication by videotaping the actions of the police in arresting her son in public. No reasonably competent police officer would believe otherwise.

III. **DEFENDANT POLICE OFFICERS FAILED TO ADDRESS ONE ASPECT OF PLAINTIFF'S FIRST AMENDMENT CLAIM.**

Defendants' motion to dismiss addresses only the arrest for violation of §934.03(1)(a). However, plaintiff was also arrested for resisting without violence under §843.02, Fla. Stat. *See* Complaint, ¶8; Answer (DE 4), ¶8. The basis for that charge was plaintiff's having asked "too many questions concerning her son," Complaint, ¶18, or that she "told her son not [to] worry because 'it's all on video' and to 'let them be who they continue to be.'" *Id.*, ¶17. None of plaintiff's questions or comments provide a basis for arrest.

It is clearly established law that the mere verbal criticism or verbal challenge to police authority is protected under the First Amendment. *See City of Houston, Tex. v. Hill*, 482 U.S. 451, 461 (1987) ("the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."). "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Id.* at 462-3 (footnote omitted).

Thus, there was no probable cause, or arguable probable cause, for plaintiff's arrest under Fla. Stat. §843.02. Because the law was clearly established, defendant police officers are not entitled to qualified immunity.

IV. CONCLUSION.

For the reasons set forth above, defendant police officers' motion to dismiss based upon qualified immunity should be denied.

          Respectfully Submitted,

          s/ James K. Green

          James K. Green, Esq.
          JAMES K. GREEN, P.A.
          Suite 1650, Esperante
          222 Lakeview Ave.
          West Palm Beach, FL 33401
          Florida Bar No: 229466
          (561) 659-2029
          (561) 655-1357 (facsimile)

          Meredith B. Trim, Esq.
          15100 Palmwood Road
          Palm Beach Gardens, FL 33410
          Florida Bar No: 0907251
          (561) 762-1026

          *Cooperating Attorneys for the American Civil Liberties Union Foundation of Florida, Inc. – Palm Beach Chapter*

          /s Randall C. Marshall

          Randall C. Marshall, Esq.
          Legal Director
          American Civil Liberties Union
          Foundation of Florida, Inc.
          4500 Biscayne Blvd., Ste. 340
          Miami, FL 33137
          Florida Bar No: 181765
          (786) 363-2700
          (786) 363-1108 (facsimile)

          COUNSEL FOR PLAINTIFFS

CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will automatically serve all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF:

Michael T. Burke, Esq.
JOHNSON, ANSELMO, MURDOCH, BURKE, PIPER & HOCHMAN, P.A.
2455 East Sunrise Boulevard, Suite 1000
Fort Lauderdale, FL 33304

Attorneys for Defendants


James K. Green, Esq.
JAMES K. GREEN, P.A.
Suite 1650, Esperante
222 Lakeview Ave.
West Palm Beach, FL 33401
Florida Bar No: 229466

Meredith B. Trim, Esq.
15100 Palmwood Road
Palm Beach Gardens, FL 33410

*Cooperating Attorneys for the American Civil Liberties Union Foundation of Florida, Inc. – Palm Beach Chapter*


Randall C. Marshall, Esq.
Legal Director
American Civil Liberties Union
Foundation of Florida, Inc.
4500 Biscayne Blvd., Ste. 340
Miami, FL 33137

Attorneys for Plaintiff


/s Randall C. Marshall